UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LINDA LEISURE.

        Plaintiff,                         Case No. 2:07-cv-411
                                                JUDGE GREGORY L. FROST
       v.                                      Magistrate Judge Mark R. Abel

CITY OF REYNOLDSBURG, OHIO, et al.,

        Defendants.

## ORDER

This matter is before the Court on Defendants' motion for summary judgment (Doc. # 108) and on two motions from Plaintiff requesting leave to submit her "affidavits" in support of her opposition to Defendants' motion for summary judgment (Docs. # 112, 114).  For the reasons that follow, the Court **GRANTS** Plaintiff's motions and **GRANTS** Defendants' motion.

### I.  Background

On May 9, 2007 Plaintiff filed this action against the United States District Court for the Southern District of Ohio, Eastern Division, the City of Reynoldsburg, Ohio, the Mayor of Reynoldsburg Robert McPherson, the City Attorney of Reynoldsburg James E. Hood, Special Prosecutor for the City of Reynoldsburg Dennis Fennessey, Chief of Reynoldsburg Police David Suciu, Reynoldsburg Police Officers Scott McKinley, Timothy Kessler, Larry Finkes, and Mark Moser, Ohio State Highway Patrol Trooper Rodney Stufflebean, and Columbus Police Officers Delmar Knotts, and Steven Knotts.

In the complaint, Plaintiff alleges that Defendants' behavior deprived her of the privileges and immunities secured by the Constitution of the United States; specifically, the

First, Fourth, Sixth, and Fourteenth Amendments. Plaintiff claims that Defendants' conduct violates 42 U.S.C. § 14141, 42 U.S.C. § 1983 ("Section 1983"), 42 U.S.C. § 1985 ("Section 1985"), and 42 U.S.C. § 1986 ("Section 1986").

On August 14, 2007 this Court granted the motions to dismiss of the United States District Court for the Southern District of Ohio (Doc. # 38), Ohio State Highway Patrol Trooper Rodney Stufflebean (Doc. # 19), and Columbus Police Officers Steven Knotts and Delmar Knotts (Doc. # 17).

On July 7, 2008 the remaining Defendants filed a motion for summary judgment. (Doc. # 108). On July 28, 2008 Plaintiff filed a memorandum in opposition to Defendants' motion (Doc. # 109) and on August 7, 2008 Plaintiff filed a supplement to her opposition memorandum (Doc. # 110). On August 11, 2008 Defendants filed a reply in support of their motion for summary judgment. (Doc. # 111).

On August 13, 2008 Plaintiff filed a motion requesting permission to file her own affidavit to support her opposition to Defendants' motion for summary judgment (Doc. # 112) and Defendants opposed that motion (Doc. # 113).

On August 18, 2008 Plaintiff filed a second motion requesting permission to file another affidavit in support of her opposition to Defendants' motion for summary judgment. (Doc. # 114.)

## II.  Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if "there is no genuine issue as to any material fact . . . ." Fed. R. Civ. P. 56(c). In making this determination, the evidence must be viewed in the light most favorable to the non-

moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255.

The party moving for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, the burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)); *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995) ("nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial"). Once the burden of production has so shifted, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Catrett*, 477 U.S. at 324. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

In ruling on a motion for summary judgment "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the

nonmoving party's claim." *Glover v. Speedway Super Am. LLC,* 284 F. Supp.2d 858, 862 (S.D. Ohio 2003) (citing *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989)). Instead, a "court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties." *Id.*; Fed. R. Civ. P. 56(c).

### III. Analysis

#### A. Plaintiff's Motions

Plaintiff has filed two motions requesting to supplement her memorandum in opposition to Defendants' motion for summary judgment (Docs. # 112, 114) and has also filed a supplement to her opposition without first requesting permission to do so (Doc. # 110). The Court **GRANTS** both of Plaintiffs' motions and accepts as filed Plaintiff's supplement to her opposition memorandum. To the extent that any of this "evidence" is admissible and relevant, it shall be considered.

#### B. Defendants' Motion for Summary Judgment on Plaintiff's Section 1983 Claims

In the complaint,[1] Plaintiff brings the instant action for monetary damages and prospective injunctive relief against the City of Reynoldsburg and against all of the individual

---

[1] In reading the complaint, the Court is cognizant of Plaintiff's *pro se* status and has construed her pleadings liberally and held them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21(1972); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Indeed, this Court has previously instructed that a court should make a reasonable attempt to read the pleadings of a *pro se* litigant to state a valid claim on which the plaintiff could prevail, despite any failure to cite proper legal authority, confusion of various legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *Ashiegbu v. Purviance*, 74 F. Supp. 2d 740, 749 (S.D. Ohio 1998) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

defendants in both their official and personal capacities under Section 1983, which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).

**1. Official Capacity Claims**

To the extent that Mayor McPherson, City Attorney Hood, Special Prosecutor Fennessey, Chief of Police Suciu, and Officers McKinley, Kessler, Finkes, and Moser are named in their official capacities, it is simply another way of pleading a claim against the state of Ohio, *Hafer v. Melo*, 502 U.S. 21, 25 (1991), and they are absolutely immune from damages liability under the Eleventh Amendment to the United States Constitution.[2] *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Wolfel v. Morris*, 972 F.2d 712, 718-19 (6th Cir. 1992).

Consequently, Plaintiff cannot maintain this action for damages against any of the city officials named in their official capacities. Accordingly, the Court **GRANTS** Defendants'

---

[2]The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

motion for summary judgment on the claims for damages against all of the individual defendants named in their official capacity.

**2. Personal Capacity Claims**

Plaintiff brings claims for damages and injunctive relief against the individual defendants in their personal capacity.

### a. In their personal capacities, Hood and Fennessey are entitled to absolute prosecutorial immunity from suit.

Plaintiff's allegations[3] related to Attorneys Hood and Fennessey pertain to their alleged filing of sixty four criminal charges against Plaintiff for "malicious and political reasons." Complaint at 6.  The United States Supreme Court has held that prosecutors in their personal capacities are absolutely immune from suits for monetary damages "in initiating a prosecution and in presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976).  Actions falling within the scope of initiating a prosecution and presenting the State's case, the advocacy function, are defined as those "intimately associated with the judicial phase of the criminal process[.]" *Id.* at 430.  Furthermore, such immunity cannot be overcome by allegations of malice.  *Id.* at 427.

While it is not always clear whether a given action falls within the prosecutor's advocacy function, there is little doubt that evaluation of the criminal charges filed against Plaintiff and the decision to prosecute Plaintiff on those charges does.  *See Boone v. Kentucky*, 72 Fed. Appx.

---

[3]Plaintiff also alleges that City Attorney Hood is "protecting Leslie Wexner of the Limited Inc."  Attorney Hood denies this.  *See* Declaration of James E. Hood, ¶¶ 3-4 (attached to Defendants' motion for summary judgment).  However, even if Hood is "protecting" Mr. Wexner, and there is no evidence that he is, such actions do not constitute a violation of any of Plaintiff's civil rights and therefore, Attorney Hood is entitled to summary judgment on this claim.

306, 307 (6th Cir. 2003) ("The decision on whether or not to prosecute is unquestionably advocacy and is at the heart of the *Imbler* holding."); *Ireland v. Tunis*, 113 F.3d 1435, 1446 (6th Cir. 1997) (the immunity extends to a prosecutor's decision on whether or not to prosecute a case). This is true even if Plaintiff's allegations related to the prosecutors' malicious intent were true. *See Grant v. Hollenbach*, 870 F.2d 1135 (6th Cir. 1989) ("The decision to prosecute . . . 'even if malicious and founded in bad faith, is unquestionably advocatory and at the heart of the holding in *Imbler*.' ").

Moreover, even if Hood and Fennessey were not entitled to prosecutorial immunity, they would still be entitled to summary judgment on Plaintiff's allegations because Plaintiff has failed to submit any evidence to support her claims that these two prosecutors somehow violated her constitutional rights. Hood and Fennessey, however, have submitted evidence showing that they did not violate Plaintiff's civil rights. Having met their burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact, *Catrett*, 477 U.S. at 323, the burden has shifted to Plaintiff to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. Once the burden of production has so shifted, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Catrett*, 477 U.S. at 324. This, Plaintiff has failed to do.

Consequently, even when viewing the evidence in the light most favorable to Plaintiff, no reasonable jury could return a verdict in her favor on her claims for damages against Hood and Fennessey in their personal capacities. *See Anderson,* 477 U.S. at 248. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on the claims against City Attorney Hood

and Special Prosecutor Fennessey in their personal capacities.

### b. In their personal capacities, Suciu, McKinley, Kessler, Finkes, and Moser are entitled to summary judgment.

In the complaint, Plaintiff alleges that Mayor McPherson, Police Chief David Suciu, and Reynoldsburg Police Officers Scott McKinley, Timothy Kessler, Larry Finkes, Mark Moser have engaged in the falsification of official reports to assist and protect the state sponsored domestic terrorist vigilante gang, and that they have engaged in a pattern and practice of having Plaintiff falsely arrested, subjected to excessive force during arrests or detainment (including "torture by attempted suffocation" by not allowing her out of the back seat of a police cruiser), and subjecting her to illegal searches and seizures. To raise an issue of material fact with regard to any of these alleged constitutional violations, Plaintiff must adduce evidence identifying these Defendants as the individuals who violated Plaintiff's constitutional rights, *e.g.*, the name of the individual who falsely arrested, searched, seized or used excessive force against her. *Caudell v. City of Loveland*, No. 1:03-CV-692, 2006 U.S. Dist. LEXIS 17971, *12-13 (S.D. Ohio Apr. 10, 2006) (citing *Sharrar v. Felsing*, 128 F.3d 810, 821 (3rd Cir. 1997) and *Thornton v. Spooner*, 872 F.2d 1029, 1989 U.S. App. LEXIS 5426, 1989 WL 34026, *21 (6th Cir. 1989)). *See also Kepley v. Lantz*, No. 3:05-CV-7474, 2007 WL 2085401 (N.D. Ohio July 18, 2007) ("[i]t is well established that a plaintiff cannot recover in a § 1983 action if [she] does not identify the officer that caused the alleged deprivation of [her] constitutional rights." ).

Plaintiff, however, has failed to describe any specific conduct on the part of Police Chief Suciu, and Officers McKinley, Kessler, Finkes, and Moser. Yet, these Defendants specifically deny violating Plaintiff's civil rights. *See* Declaration of David Suciu ¶¶ 5-6; Declaration of Scott McKinley ¶3, 6; Declaration of Timothy Kessler ¶2-7, 11; Declaration of Larry Finkes, ¶¶

8

3, 11; Declaration of Mark Moser, ¶¶ 2-3, 6 (all attached to Defendants' motion for summary judgment). These Defendants, like Hood and Fennessey *supra*, have met their burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact, *Catrett*, 477 U.S. at 323, and the burden has shifted to Plaintiff to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. Plaintiff simply cannot rest on her pleadings or merely reassert her previous allegations to survive an appropriately supported motion for summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Catrett*, 477 U.S. at 324. Plaintiff has failed to meet her burden.

With regard to Mayor McPherson, Plaintiff does identify him as the individual who allegedly caused her harm by promoting "citizen vigilantism." (Doc. # 2 at 2.) Plaintiff does not explain how the mayor's alleged promotion of citizen vigilantism violates Plaintiff's constitutional rights. Even if Plaintiff had, however, alleged a violation of her constitutional rights, Mayor McPherson, like the other defendants, specifically denies Plaintiff's allegation and Plaintiff fails to come forward with any argument–let alone any evidence to counter the mayor's evidence. Once again, Plaintiff simply cannot rest on her pleadings after Defendants have met their burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Catrett*, 477 U.S. at 323.

This Court has given Plaintiff every chance to submit evidence on her behalf and she has utterly failed to provide any that support her claims. (*See* Docs. #110, 112, 114.) Thus, even when viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable

inferences in her favor, Plaintiff has failed to raise any genuine issue of material fact that would prevent granting summary judgment to these individual defendants in their personal capacities. *See Anderson*, 477 U.S. at 255.  Consequently, Plaintiff cannot maintain this action for damages against McPherson, Suciu, McKinley, Kessler, Finkes, and Moser in their personal capacities.

Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on the claims against Mayor McPherson, Chief of Police Suciu, and Officers McKinley, Kessler, Finkes, and Moser in their personal capacities.

### 3. City of Reynoldsburg

Initially, the Court notes that the City of Reynoldsburg is absolutely immune from suits for damages based on the Eleventh Amendment to the United States Constitution.  Congress did not disturb the states' Eleventh Amendment immunity when it passed Section 1983.  *Wolfel*, 972 F.2d at 718-19 (citing *Will*, 491 U.S. at 58, n.1 and *Quern v. Jordan*, 440 U.S. 332 (1979)).  The Eleventh Amendment, however, does not bar suits seeking prospective injunctive relief to end continuing violations of federal law against state officials.  *Popovich v. Cuyahoga County Ct. of Common Pleas.*, 227 F.3d 627, 633 (6th Cir. 2000); *Wolfel*, 972 F.2d at 719.

"A plaintiff can bring a claim under section 1983 when she is deprived 'of any rights, privileges, or immunities secured by the Constitution and laws,' as a result 'of any statute, ordinance, regulation, custom, or usage, of any State.' " *Doe v. Claiborne County*, 103 F.3d 495, 505 (6th Cir. 1996) (quoting 42 U.S.C. § 1983).  A municipal liability claim against the City of Reynoldsburg must be examined by applying a two-pronged inquiry:

> (1) Whether the plaintiff has asserted the deprivation of a constitutional right at all; and
>
> (2) Whether the [City of Reynoldsburg] is responsible for that violation.

*Id.* at 505-506 (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992)). For liability to attach, both questions must be answered in the affirmative. *Id.*

Plaintiff alleges ongoing violations of federal law against the City of Reynoldsburg based on the actions and inactions of the Reynoldsburg police officers and their chief, *e.g.*,[4] engaging in a pattern and practice of having Plaintiff falsely arrested, subjected to excessive force during arrests or detainment and of not protecting Plaintiff from a citizen vigilante hate group. Plaintiff, however, cannot base her claim against the City solely on the police officers' conduct, for *respondeat superior* is not available as a theory of recovery under Section 1983. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). "Rather, she must show that the City *itself* is the wrongdoer." *Claiborne County*, 103 F.3d at 507 (emphasis in original) (citing *Collins*, 503 U.S. at 122).

Under *Monell*, the City cannot be found liable unless Plaintiff can establish that an officially executed policy, or the toleration of a custom within the City leads to, causes, or results in the deprivation of a constitutionally protected right. *Id.* (citing *Monell*, 436 U.S. at 690-91). Plaintiff does not assert that the officers' conduct resulted from an officially enacted policy. Instead she claims that, Section 1983 liability exists due to a "custom," which, although not officially adopted or established through the decision-making channels, led to the violations to which she was subjected. *See id.* (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988)).

A "custom" for purposes of *Monell* liability must "be so permanent and well settled as to

---

[4] These are the same allegations Plaintiff alleges against the officers in their official and personal capacities. *See supra.*

11

constitute a custom or usage with the force of law." *Id.* (quoting *Monell*, 436 U.S. at 691 (internal quotation marks and citation omitted)); *see also Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993). In turn, the notion of "law" must include "deeply embedded traditional ways of carrying out state policy." *Id.* (quoting *Nashville, Chattanooga & St. Louis Ry. Co. v. Browning*, 310 U.S. 362, 369 (1940)). "It must reflect a course of action deliberately chosen from among various alternatives." *Id.* (citing *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985). In short, a "custom" is a "legal institution" not memorialized by written law. *Id.* (quoting *Feliciano*, 988 F.2d at 655).

Additionally, Plaintiff must show "that the City as an entity 'caused' the constitutional violation, [and she] must also show a direct causal link between the custom and the constitutional deprivation; that is, she must 'show that the particular injury was incurred because of the execution of that policy.' " *Id.* (quoting *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). This requirement is necessary to avoid *de facto respondeat superior* liability explicitly prohibited by *Monell*. *Id.*

Here, assuming *arguendo* that Plaintiff has alleged deprivations of her constitutional rights, Plaintiff's claims against the City of Reynoldsburg still necessarily fail. Plaintiff has brought forth no evidence that would tend to show that the alleged pattern and practice of harming Plaintiff is a legal institution not memorialized by written law. Further, even if Plaintiff had shown that the City of Reynoldsburg has a custom of depriving Plaintiff of her constitutional rights, she has utterly failed to show a direct causal link between that custom and the constitutional violations she allegedly has suffered.

Consequently, even when viewing the evidence in the light most favorable to Plaintiff,

12

and drawing all reasonable inferences in her favor, no reasonable jury could return a verdict in her favor on her claims against the City of Reynoldsburg. *See Anderson*, 477 U.S. at 248, 255. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on all Plaintiff's claims against the City of Reynoldsburg.

**C. Defendants' Motion for Summary Judgment on Plaintiff's Remaining Claims**

    **1. 42 U.S.C. § 14141**

This Court has already addressed Plaintiff's claim pursuant to 42 U.S.C. § 14141 in its Opinion and Order granting dismissal of three of the original defendants, stating:

> Section 14141(a) makes it unlawful for law enforcement officers to engage in a pattern or practice that deprives individuals of their civil rights. Section (b) of the statute authorizes the Attorney General to file an action in the name of the United to obtain relief to eliminate the practice. No private cause of action exists under this statute.

(Doc. # 79 at 7.)

This argument is equally applicable to Plaintiff's claims against the defendants remaining in this action. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on Plaintiff's claim brought under 42 U.S.C. § 14141.

    **2. 42 U.S.C. §§ 1985(3) and 1986**

In the same Opinion and Order in which this Court discussed 42 U.S.C. § 14141 it also addressed Plaintiff's claims brought pursuant to Sections 1985 and 1986:

> Section 1985(3) provides in pertinent part:
>
>> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . party so injured or deprived may have an action for the recovery of damages

13

> occasioned by such injury or deprivation, against any one or more of the conspirators.
>
> To prevail on a § 1985(3) claim, one must prove " '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.' " *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005) (quoting *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828-29 (1983)). Additionally, Plaintiff must demonstrate that the conspiracy was motivated by race or class-based animus. *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (stating that "[t]he language requiring intent to deprive of equal protection, or equal privileges and immunities, means there must be some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions").
>
> Here, Plaintiff fails to assert, much less demonstrate, any racial or class-based animus. Thus, this Court finds that Plaintiff has failed to state a claim under § 1985 upon which relief can be granted.
> . . . .
>
> Because Plaintiff fails to state a claim under § 1985(3), Plaintiff also fails to state a claim under § 1986. *Id.* (stating that "[B]efore plaintiff can recover under § 1986, he must establish a violation of 42 U.S.C. § 1985"); *see also Dowsey v. Wilkins*, 467 F.2d 1022, 1026 (5th Cir. 1972).

(Doc. # 79 at 5-6, 7.)

This argument too is equally applicable to Plaintiff's claims against the defendants remaining in this action. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on Plaintiff's claim brought under 42 U.S.C. § 1985 and § 1986.

### IV. Conclusion

Based on the foregoing, the Court **GRANTS** Plaintiff's motions requesting to submit her affidavits in support of her opposition to summary judgment (Docs. # 112, 114) and **GRANTS** Defendants' motion for summary judgment (Doc. # 108). The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Defendants.

**IT IS SO ORDERED.**

**/s/ Gregory L. Frost**
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**